EMMA STEVENS, administratrix, *vs.* EDWARD E. STROUT.

Essex.    November 5, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

Evidence that a contractor's general superintendent directed K., a mason in the contractor's employ, to " take S. [another mason] and two helpers " and set a capping stone on a corner of the building, and departed, that K. said " Come on, S.," and that then they, with the aid of the two helpers, constructed a staging to use in setting the stone, that K. and S. received the same pay and that K. had no authority to hire or discharge employees, will not warrant a finding that K. was one " intrusted with and exercising superintendence, and whose sole or principal duty was that of superintendence," within the meaning of R. L. c. 106, § 71, cl. 2.

The mere fact, that, by reason of his experience, one mason employed by a contractor in the erection of a building gave directions to another mason and two helpers working with him on a certain part of the work, does not constitute him one whose sole or principal duty was that of superintendence within the meaning of R. L. c. 106, § 71, cl. 2.

A contractor is not liable, under R. L. c. 106, §§ 71, 72, for injury to an employee or death resulting therefrom, caused by the falling of a staging constructed in the course of their duties by the employee's fellow workmen, although it appears that one of such workmen, by reason of his experience, gave directions in the performance of that particular piece of work, the contractor and his superintendent being absent, and that the staging as constructed was neither safe nor suitable, it not appearing that the contractor failed to furnish proper materials for the purpose or that the sole or principal duty of the fellow workman who gave such directions was that of superintendence.

TORT by the administratrix of one Ervin S. Stevens, who was alleged, while an employee of the defendant, to have received injuries from which after conscious suffering he died. Writ in the Superior Court for the county of Essex dated February 6, 1905.

The injury was alleged to have been received on July 25, 1904. The action originally was brought by Ervin S. Stevens. Upon his death on September 10, 1907, and the appointment of the plaintiff as the administratrix of his estate, she was admitted to prosecute the action, and was allowed to amend the declaration by including counts under R. L. c. 106, § 72, seeking recovery for the death of the intestate after conscious suffering.*

---

* The questions, whether, where an employee received injuries which gave him a cause of action under R. L. c. 106, § 71, and, after bringing such

The amended declaration was in five counts, the first seeking recovery for conscious suffering of the plaintiff's intestate, alleged to have been due to negligence of the defendant in failing to supply him with suitable tools and appliances. The second count alleged as the negligence of the defendant the placing of the plaintiff's intestate at work "upon a staging constructed improperly and composed of inadequate, defective and unsafe materials." The negligence of the defendant alleged in the third count was placing the plaintiff's intestate at work in a dangerous place. The fourth count was under R. L. c. 106, § 71, cl. 1, and § 72, for conscious suffering and death of the plaintiff's intestate resulting from a defect in the ways, works or machinery of the defendant. The fifth count, under § 71, cl. 2, and § 72 of the same chapter, set forth as the cause of the injury and death negligence of some person in the service of the defendant intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence.

At the trial, which was before *Sanderson,* J., it appeared that the plaintiff's intestate was a mason employed by the defendant, a contractor, in the building of the Burdett College building in Lynn, and that, while he and one Kallock and two colored men were engaged in putting in place a cap or ornamental stone, a staging upon which they were standing gave way and the stone fell upon the plaintiff, causing the injury which was the basis of this action.

The superintendent in charge of the work was one Arthur L. Strout, the defendant's brother. There was testimony of one Stanton tending to show that the superintendent told Kallock "to take Steve [the plaintiff's intestate] and" two helpers "and start on that corner . . . and after he had spoken to . . . [the superintendent] . . . something about some tools, [the superintendent] told him to go ahead with what he had, and he

---

action within a year after the injury, died more than a year after it, his administrator should be allowed to amend the declaration so as to include a count under § 72, and whether the employer under such circumstances would be liable under § 72, were argued by the counsel for both parties on their briefs, but were not decided by the court, because the court held that the evidence would not warrant findings of fact sufficient to maintain an action against the defendant under § 71.

would get something, whatever it was they were talking about; Mr. Kallock turned around and simply said ' Come on, Steve.' . . . Mr. Stevens asked how he was going to set the stone, and I do not just remember what Mr. Kallock answered, but they went to work directly afterwards to roll the stone up to the building. I saw Mr. Kallock say something to the two colored men. . . . They were all working together. . . . At the time I heard Mr. Strout say what he did to Mr. Kallock, I saw him go in the driveway between the Item building and the Burdett College building," a place distant about thirty feet from where the men were working. " I did not see him again before the accident," which occurred between a quarter and half an hour later.

Kallock, called by the plaintiff, testified in direct examination: " I had a talk with . . . [the superintendent] . . . in reference to laying the stone. He called me out, Mr. Stevens and I, about the work in front of the stone. We went out and looked at the stone and he showed what stone was going on the corner. I looked that over and I saw that it was a Lewis stone, and I made a remark to him we should have to have a derrick to set it with . . . and he said ' Do the best you can and I will try and get you one.' He said ' Here is two laborers, good handy fellows, that will get you what you want to do with, bars, material, etc.' . . . I helped construct the staging. . . . I did not see any crowbars about there. I did not see any horses. I could not say whether there were any jack screws there or not. I didn't see any." On cross-examination he testified: " I had known Mr. Stevens for about five years. His occupation had been the same as mine, namely, mason and bricklayer. He only worked on one job with me before as mason and bricklayer. He worked under me when I was foreman for Mr. Butler. On this job I was paid fifty cents an hour just the same as the rest. . . . I was in no sense a boss. I had no authority to hire or discharge employees."

The superintendent Strout, called by the plaintiff, testified that the plaintiff's intestate and Kallock were getting the same wages. " Kallock and Stevens had worked about three weeks on this building. They were both masons and bricklayers of long experience. Stevens had been in the habit of building

staging for many years. I don't know about Kallock. He never worked for me before. On the morning when this accident happened there was about that job a large amount of material provided for the construction of stagings, such as planks, horses, and barrels, etc., and nails. In the basement there was no floor. It was dirt. I don't know whether Stevens had worked as a mason setting stone in my employ or not. I don't remember. I left the building of any temporary stagings that might be necessary to the men themselves. Bricklayers and masons on small jobs usually build their own stagings. There were crowbars and jacks about the building."

An experienced mason and contractor, testifying on behalf of the plaintiff, stated that the method used by the workmen in raising the stone in question was not safe or suitable. "Proper utensils to use in setting a stone under circumstances like those in this case would be skids and rollers and bars and pry it along on the sidewalk in the condition it existed until you got within a few feet of your landing place; and then prepare your staging or groundwork, or whatever was necessary to hold it to work it along in place. That would be one way. Another would be to have your derrick to hitch onto it, to drag it in with your derrick, and then set it in with your derrick. There are two or three ways you could handle that stone."

Other facts are stated in the opinion.

At the close of the plaintiff's evidence the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*R. L. Sisk*, (*J. H. Sisk* with him,) for the plaintiff.

*R. Spring*, (*W. Rand* with him,) for the defendant.

HAMMOND, J. Without reciting the evidence in detail, it is sufficient to say that after a careful reading of it we are of opinion that it does not warrant a finding that Kallock was a superintendent. It is manifest that he acted principally as a workman. Even if it be assumed that by reason of his experience he gave directions in the moving of the stone and in the building of the staging, still that is far from making his sole or principal duty that of superintendence.

There is some conflict of evidence as to whether Stevens, the plaintiff's intestate, assisted in making the staging. Kallock,

called by the plaintiff, testified that " Stevens was around there; he did nothing in reference to the construction of the staging, only he passed planks from the sidewalk into the cellar," and (on cross-examination) " I should say when a man stood in the position Mr. Stevens was there was nothing to obstruct his vision of the basement; I don't know how long he stood there passing planks; it wouldn't take many minutes to build the whole thing, about fifteen or twenty; I couldn't say that Mr. Stevens was passing plank all the time ; we were setting barrels part of the time; and when we were setting barrels nobody would pass plank; we placed barrels and then put planks on them." Stanton testified that when they started in to construct the staging, " Stevens was talking with me; I did not see him pass any plank."

We are of opinion however that upon the whole evidence this must be regarded as a case where the men employed in moving and setting the stone, by the fall of which the injuries to Stevens were caused, were expected to build the temporary staging required for that specific work ; that Stevens was one of the gang; and that the negligence in the construction of the staging was that of his fellow workman in not making proper use of the materials furnished by the employer.    For the consequences of such a neglect the defendant is not answerable provided he furnished proper materials.    *O'Connor* v. *Neal*, 153 Mass. 281.    *Thompson* v. *Worcester*, 184 Mass. 354, and cases cited.    There was no evidence of a failure on the part of the defendant to furnish proper materials.

*Exceptions overruled.*